# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 0:20-CR-00028-JRT-KMM |
| Plaintiff, | |
| v. | **ORDER** |
| MANUEL Ramirez-Rodriguez, | |
| Defendant. | |

      Manuel Ramirez-Rodriguez has moved the Court to reconsider the Order detaining him at Sherburne County Jail, and temporarily release him to house arrest. [ECF No. 20, 34.] His relies on both 18 U.S.C. § 3142(f), which allows reconsideration of detention in the face of changed circumstances, and § 3142(i), which allows temporary release from custody for a "compelling reason." Mr. Ramirez-Rodriguez bases his motion on the global COVID-19 pandemic, which has begun to spread within jails and prisons throughout the country and even in Minnesota. Specifically, Mr. Ramirez-Rodriguez observes that he is at a high risk of suffering severe complications from COVID-19 if he is exposed because he is 52 years old and suffers from poorly controlled diabetes, one of the significant risk factors for serious outcomes from coronavirus. The government opposes Mr. Ramirez-Rodriguez's release from custody, claiming that he presents a flight risk and a danger to the community. The government, observing that Mr. Ramirez-Rodriguez is subject to an ICE detainer, also argues that it will likely deport him from the country if he is released from federal pretrial custody, and that reality heightens his risk of nonappearance. Finally, the government observes that, thus far, there are no known cases of COVID-19 in the jail where Mr. Ramirez-Rodriguez is being held, and emphasizes the significant efforts that have been undertaken by the administration at the jail to maintain that status quo.

      For the reasons set forth below, the Court finds that temporary release is appropriate in this case pursuant to 18 U.S.C. § 3142(i). Mr. Ramirez-Rodriguez is

ordered released from the custody of the U.S. Marshal to the third-party temporary custody of his former spouse, to be under house arrest at her home under the supervision of the United States Probation Office.

I.   Factual Background[1]

     **Manuel Ramirez-Rodriguez**

Manuel Ramirez-Rodriguez, who is 52 years old, was born and raised in Mexico. He first came to the United States when he was 17, and has lived between the United States and Mexico throughout his adult life. Mr. Ramirez-Rodriguez has been removed from the United States at least 15 times, and has used a variety of aliases and false identifications throughout his life in this country. He is currently subject to an Immigration and Customs Enforcement ("ICE") detainer that will result in his transfer to ICE custody if he is released.

Mr. Ramirez-Rodriguez's siblings and parents reside in Mexico. Mr. Ramirez-Rodriguez has one child, a 17-year-old son who lives in Renville County, Minnesota, with Mr. Ramirez-Rodriguez's former partner, ▇▇▇▇▇▇▇▇▇▇▇ Although she is remarried, Ms. ▇▇▇▇▇▇ and Mr. Ramirez-Rodriguez remain friendly and she is supportive of him.

Mr. Ramirez-Rodriguez is currently charged with illegal reentry in violation of 8 U.S.C. § 1326.[2] He was convicted of the same offense in this District once before, serving a 15-month sentence in 2010 and 2011 before being deported. In addition, he has

---

[1] The information in this section comes largely from the bond report and several updates prepared by United States Probation and Pretrial Services. [ECF Nos. 10, 26, 27, 31, 32.]

[2] Although Mr. Ramirez-Rodriguez was originally charged by Indictment with violating 8 U.S.C. §§ 1326(a) and (b)(2), he now faces a single-count Information simply charging a violation of 8 U.S.C. § 1326(a). [Indict., ECF No. 1; Information, ECF No. 33.] While the record does not make plain the reason for the change, it may be a result of Mr. Ramirez-Rodriguez's approval for participation in the District's "fast track" program, which provides for expedited proceedings in certain illegal reentry cases. [*See* ECF No. 16 at 1 ("The parties have determined that Mr. Ramirez is eligible for the U.S. Attorney's Office Early Disposition or 'Fast-Track' Program.").]

been convicted of several other felony offenses, including burglary and larceny. Somewhat unsurprisingly considering his age, Mr. Ramirez-Rodriguez's criminal history is quite dated. His 2010 unlawful reentry offense and one 2010 burglary conviction are his only felony offenses since 1991. He may have also been arrested twice in 2015 for driving under the influence of alcohol, though details on those offenses remain unclear. There is no indication in the bond reports that, between his 2010 prosecution and his 2020 arrest for illegal reentry, Mr. Ramirez-Rodriguez had any other contact with the criminal justice system in any state.

According to the government, Mr. Ramirez-Rodriguez currently faces a sentence of "at least 12 months in prison." [ECF No. 39 at 2.] He will then almost certainly be removed from the United States once again. [*Id.*]

**Medical Condition**

Central to Mr. Ramirez-Rodriguez's request for relief are his age (52) and the fact that he suffers from diabetes. According to Mr. Ramirez-Rodriguez and Pretrial Services, Mr. Ramirez-Rodriguez was recently diagnosed with diabetes. [ECF No. 34 at 11-13.] When he was first arrested three months ago, his blood sugar levels were extraordinarily high, and his disease was completely out of control. Although there was apparently some initial difficulty in getting Mr. Ramirez-Rodriguez's condition under control, things have stabilized in recent weeks. He is currently taking three separate medications, and has received substantial education about how to effectively manage his diabetes.

It is uncontested that people suffering from diabetes are at a substantially greater risk for serious complications from coronavirus than those who do not have the illness. According to the American Diabetes Association, not only are people with diabetes at a greater risk of "experiencing serious complications from COVID-19," but people who experience blood sugar fluctuations, as Mr. Ramirez-Rodriguez has in the recent past, are at an even higher risk.[3] Although the enhanced risk has been thus far difficult to quantify, a large-scale study of cases from China, summarized in the JAMA Network, an online

---

[3] American Diabetes Association, *COVID-19*, https://diabetes.org/covid-19-faq ("Do people with diabetes have a higher chance of experiencing serious complications from COVID-19?") (last visited April 13, 2020).

publication of the Journal of the American Medical Association, suggested that while the overall fatality rate from COVID-19 was 2.3%, the fatality rate was 7.3% for people suffering from diabetes.[4] There is also some suggestion in the literature that people with diabetes might be at a higher risk of contracting the virus in the first place, though this could be explained by the reality that people who show more severe symptoms are more likely to be tested and have their coronavirus-positive status confirmed.

**COVID-19 in Jails and Prisons**

It is uncontested that the world is currently facing a devastating global pandemic, and the Court will not recount here the flood of bleak and heartbreaking news regarding COVID-19. For today's purposes, a few things are important.

First, COVID-19 continues to spread in the United States and in Minnesota. As of April 13, 2020, more than 1,600 Minnesotans have been diagnosed with the disease, nine of whom reside in Sherburne County. So far, 70 people have died. Although there are signs that the extreme social distancing measures taken by Minnesota are beginning to "flatten the curve," experts predict that the disease will continue to spread in the State, the number of cases will continue to rise for at least some time, and the total number of deaths will continue to grow.

Second, COVID-19 has been spreading in jails and prisons around the country. In some institutions, the disease has raged out of control. *See, e.g.*, The New York Times, *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, https://nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html (last visited Apr. 13, 2020). Indeed, according to The New York Times, the Cook County Jail in Illinois is the single largest source of cases in the entire American outbreak, exceeding even severely afflicted cruise ships and nursing homes.[5] Federal jails and prisons have not been immune

---

[4] JAMA Network, *Characteristics of and Important Lessons From the Coronavirus Disease 2019 (COVID-19) Outbreak in China*, https://jamanetwork.com/journals/jama/fullarticle/2762130 (last visited Apr. 13, 2020).

[5] The New York Times, *Chicago's Jail Is Top U.S. Hot Spot as Virus Spreads Behind Bars*, https://nytimes.com/2020/04/08/us/coronavirus-cook-county-jail-chicago.html. (last visited Apr. 13, 2020).

4

to this crisis. Cases have been reported in pretrial facilities around the country, and in numerous United States Bureau of Prisons ("BOP") facilities as well. According to the BOP's website, 352 BOP inmates and 189 staff members at 38 facilities around the country been infected, not including those testing positive at halfway houses.[6] Nor have facilities in the State of Minnesota been spared. Between people who have tested positive and those whom the Department of Corrections is presuming positive due to symptoms and contact with an infected person, there are 38 cases in area prisons or juvenile detention centers in the State, and numerous correctional officers and staff members have contracted the disease as well.[7]

Finally, there are no reported cases yet at Sherburne County Jail, where Mr. Ramirez-Rodriguez is being held. Jail administration and staff are working very hard to keep the virus from getting a foothold within the facility, and the measures they have undertaken are detailed at length in an affidavit prepared by Brian Frank, the Sherburne County Jail Administrator. [ECF No. 28-1.] Those efforts, though laudable and thus far successful, are not and cannot be perfect, and counsel for Mr. Ramirez-Rodriguez have submitted evidence from two experts demonstrating ways that the virus can defeat even the robust actions taken by the jail. [ECF Nos. 34-1, 34-2.]

## II. Analysis

The Court finds that Mr. Ramirez-Rodriguez's case presents a unique set of circumstances that, when carefully reviewed together, support his immediate release into the community on certain strict conditions of supervision. Specifically, his medical condition and the dangers it creates if he contracts coronavirus, the lack of danger he presents to the community, the availability of a strong release plan, and the nature of and potential penalties attendant to the charges against him all combine to support temporary release.

---

[6] Federal Bureau of Brisons, *COVID-19 Coronavirus*, https://bop.gov/coronavirus/index.jsp. (last visited Apr. 13, 2020).

[7] Minnesota Department of Corrections, *COVID-19 Updates*, https://mn.gov/doc/about/covid-19-updates/ (last visited Apr. 13, 2020).

### A. Relevant Statutory Provisions

The Bail Reform Act permits a defendant to be released pending trial on personal recognizance or subject to a condition or combination of conditions that will reasonably assure the defendant appears for trial and the safety of the community. 18 U.S.C. § 3142(a)(1). If, however, a defendant is ordered detained until trial, the statute allows the Court to reconsider the detention decision. 18 U.S.C. § 3142(f)(2). Specifically, the statute provides that a detention hearing may be reopened

> at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

*Id.*

Section 3142(i) also allows for "temporary release" of a defendant. Pursuant to this subdivision a judge may:

> permit the temporary release of the person, in the custody of a United States Marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

*Id.*

### B. 18 U.S.C. § 3142(f)

Mr. Ramirez-Rodriguez first seeks release under 18 U.S.C. § 3142(f)(2), arguing that the pieces of new information which have a material bearing on determinations of risk of flight or danger to the community are his recently diagnosed diabetes, the profound risk posed by COVID-19, and the availability of a placement with a third-party custodian. The government argues that the facts justifying Mr. Ramirez-Rodriguez's detention "have not changed," and emphasizes his criminal history and lack of ties to the United States, combined with the strong incentive to flee created by the likelihood of a prison sentence followed by certain deportation. [ECF No. 28 at 9-11.]

The Court agrees that the new information relied upon by Mr. Ramirez-Rodriguez was not known to the parties at the time of the detention hearing, and that it has a material bearing on the Court's ability to craft conditions of release that will protect the community and secure Mr. Ramirez-Rodriguez's appearance. The Court also finds that the new information mitigates the risk of flight by Mr. Ramirez-Rodriguez, as well as reducing any danger he might pose to the community.[8] First, the Court finds the coronavirus will likely make it more difficult for Mr. Ramirez-Rodriguez to flee the District, as most means of domestic travel are substantially hampered by lock-downs and cancellations. Moreover, Mr. Ramirez-Rodriguez's new diagnosis of diabetes means that he is very vulnerable to the virus, making it far more likely that he will avoid travel, even to flee, in order to avoid being exposed to the contagion. But most importantly, the availability of a safe and verifiable placement with a third-party custodian—the mother of Mr. Ramirez-Rodriguez's child—presents a plan to mitigate the risk of nonappearance that was not known at the time of Mr. Ramirez-Rodriguez's initial appearance.

When the Court considers this new information along with all of the other factors the Court must take into account pursuant to § 3142(g), it suggests that a "combination of conditions" exists which could achieve the goals of the Bail Reform Act. However, the Court need not determine whether § 3142(f)(2), by itself, provides an adequate vehicle to support Mr. Ramirez-Rodriguez's release at this time. Specifically, the Court finds that

---

[8] In the face of a waiver of the detention hearing, and therefore no opposition, Magistrate Judge Hildy Bowbeer concluded that Mr. Ramirez-Rodriguez presented both a risk of flight and a danger to the community. [ECF No. 12.] Had this Court considered the question in the first place, it would have concluded that, absent the new information before the Court, Mr. Ramirez-Rodriguez presented a risk of nonappearance but not a danger to the community. Mr. Ramirez-Rodriguez's last felony offenses occurred a decade ago, and most of his criminal history is significantly older than that. As a 52-year-old man, statistics demonstrate that the danger of Mr. Ramirez-Rodriguez committing violent offenses will continue to drop into the future. The Florence V. Burgen Foundation, *The High Costs of Low Risk: The Crisis of America's Aging Prison Poulation*, http://www.osborneny.org/resources/resources-on-aging-in-prison/osborne-aging-in-prison-white-paper/ (July 2014) (last visited Apr. 13, 2020) (citing Chettiar, I., Bunting, W. & Schotter, G., American Civil Liberties Union, *At America's Expense: The Mass Incarceration of the Elderly*, http://www.aclu.org/criminal-law-reform/americas-expense-massincarceration-elderly).

temporary release pursuant to § 3142(i) is justified by the record, and therefore need not decide whether § 3142(f)(2) independently requires such an outcome.

### C. 18 U.S.C. § 3142(i)

Section 3142(i) allows for temporary release to a third-party custodian for a "compelling reason." Although prior to recent events, this provision was invoked infrequently, courts have used it during the current pandemic in ordering the release of pretrial and presentencing defendants in federal court.[9] *See United States v. Garcha*, Case No. 19-cr-EJD-1 (VKD), 2020 WL 1593942, at *3-5 (N.D. Cal. Apr. 1, 2020) (releasing a defendant with a weakened immune system for compelling reasons pursuant to § 3142(i)); *see also United States v. Perez*, 19 Cr. 297 (PAE), 2020 WL 1329225 (S.D.N.Y. Mar. 19, 2020) (ordering a defendant released over the government's opposition due to the defendant's "unique confluence of serious health issues and other risk factors," including lung disease and other health concerns).

Although there is no controlling authority in the Eighth Circuit governing the application of § 3142(i) to release for medical reasons, courts around the country have explored its use during the current pandemic. A Kansas court in *United States v. Clark*, Case No. 19-40068-01-HLT, 2020 WL 1446895 (D. Kan. Mar. 25, 2020), provided helpful guidance after observing that "whether a defendant's particular circumstances warrant release in light of the COVID-19 pandemic ought to [be] considered on a case-by-case basis under the 'another compelling reason' prong of § 3142(i)." *Id.* at *3. The *Clark* court identified several factors relevant to such an analysis, though its list was not exhaustive. *See id.* (indicating that the court "will evaluate *at least* the following factors"). These include:

> (1) the original grounds for the defendant's detention, (2) the specificity of the defendant's state COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19

---

[9] Most courts addressing requests for temporary release under § 3142(i) have analyzed the first half of that section, which allows release of a defendant if needed to assist in the preparation of his or her defense. *See, e.g.*, *United States v. Clark*, Case No. 19-40068-01-HLT, 2020 WL 1446895, *2 (D. Kan. Mar, 25, 2020) (collecting cases).

8

risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*Id.* The *Clark* court indicated that these factors would not necessarily be entitled to the same weight, but should be "consider[ed] as a whole to help guide the court's determination as to whether a 'compelling reason' exists such that temporary release is 'necessary.'" *Id.*

The Court finds the factors set forth in *Clark* to be a useful guide in analyzing whether Mr. Ramirez-Rodriguez has demonstrated that a compelling reason justifies his release pursuant to § 3142(i). When the Court applies the *Clark* factors to this case, they support temporary release on special conditions of supervision.

### 1. Original Detention Decision

First, the Court examines the original bases for detention, the danger to the community and risk of nonappearance presented by Mr. Ramirez-Rodriguez. Unlike the defendant in *Clark*, Mr. Ramirez-Rodriguez is neither a kingpin in a multistate drug conspiracy, nor facing a mandatory minimum sentence of 20 years. *Clark*, 2020 WL 1446895, at *4 (stating that the "need for pretrial detention is not even a close call" and noting that Mr. Clark "is the lead defendant" in a multi-defendant drug conspiracy). It is true that Mr. Ramirez-Rodriguez has a criminal history that includes five felony convictions, the most serious of which were three separate burglary convictions. However, there are no convictions revealed in the bond report for crimes that involved violence, and Mr. Ramirez-Rodriguez's only felonies in the last 29 years are two that occurred in 2010, one for third degree burglary of a barn for which he served 60 days, and one for illegal reentry.[10] Moreover, the current offense is neither a violent crime nor one that involves firearms, drugs, or children. *See* 18 U.S.C. § 3142(g) (listing the characteristics of the current offense as relevant to the question of detention or release). Mr. Ramirez-Rodriguez's age also weighs against a finding that his release subject to conditions would present an unreasonable risk to the community. Although his record presents more of a danger to the community than if Mr. Ramirez-Rodriguez had no

---

[10] Indeed, three of Mr. Ramirez-Rodriguez's five felonies occurred in a three-year period in his early 20s, culminating with a three-year prison sentence in 1991.

9

criminal history, it does not create a risk to the community that cannot be managed through conditions of supervision.

The other basis for detention, a risk of nonappearance, remains a concern to the Court. Mr. Ramirez-Rodriguez is facing a term of imprisonment followed by almost certain deportation. There is a strong incentive for Mr. Ramirez-Rodriguez to flee to avoid both consequences. However, this risk can be mitigated by his placement on house arrest at the home of his former spouse with supervision by Pretrial Services. Ms. ▮ will act as a third-party custodian, and since she is on disability, she will be around the home most of the time to help ensure that Mr. Ramirez-Rodriguez does not flee. And, unlike other defendants around the country seeking release from custody, Mr. Ramirez-Rodriguez is not facing an extremely long sentence. Based on the Court's own experience with the fast track program for which Mr. Ramirez-Rodriguez has been approved and the government's submission, it appears that Mr. Ramirez-Rodriguez is facing a sentence of around a year in prison, of which he has already served two months. This consequence, though significant, is less likely to make a defendant undertake the challenges of flight from supervision during a global pandemic than if Mr. Ramirez-Rodriguez were facing a longer term of incarceration.

### 2. Specificity of COVID-19 Risk

Next, the Court considers the specificity of the risk presented by the COVID-19 pandemic to Mr. Ramirez-Rodriguez personally. As explored above, Mr. Ramirez-Rodriguez suffers from diabetes, a recently diagnosed and serious medical condition. This condition makes him at a significantly greater risk of serious complications or death from coronavirus than if he did not suffer from diabetes. His medical condition distinguishes his motion for release from many where defendants cannot point to a factor that increases their risk should they contract the disease.

While Sherburne County is working very hard to prevent COVID-19 from taking hold in the jail, the Court fears that it is just a matter of time before the first case is identified. The incredible care to prevent the disease from entering with staff members, the community-wide limitations on travel and public activities, and the other preventative measures in place in the State are neither guaranteed to succeed nor likely to be observed

at the current high level for the next several months. Mr. Ramirez-Rodriguez has also presented evidence that although Sherburne County Jail officials have commendably taken steps to reduce the likelihood of an outbreak at the facility, the risk that the novel coronavirus finds its way into the jail cannot be eliminated. [ECF Nos. 34-1, 34-2.] In light of this reality, the risk presented to Mr. Ramirez-Rodriguez by COVID-19 weighs in favor of his release.

### 3. Release Plan and COVID-19 Risks

The third and fourth factors require the Court to consider Mr. Ramirez-Rodriguez's proposed release plan and assess whether it mitigates both the risk that he contracts COVID-19 and any risk he might present to others. Both factors weigh in favor of his release. According to the investigative report submitted by Mr. Ramirez-Rodriguez's defense team [ECF No. 36], and to the Bond Report Addendum prepared by Pretrial Services [ECF No. 32], Mr. Ramirez-Rodriguez can reside at the Fairfax, Minnesota, home of Ms. ███████ her husband, and Mr. Ramirez-Rodriguez's teenage son. Mr. Ramirez-Rodriguez will occupy a large room on a separate floor from the rest of the family. There are no firearms in the home, and it is a stable residence that Ms. ███████ has lived in for eight years. In addition, Mr. Ramirez-Rodriguez will not need to pay rent, and the property's landlord approves of Mr. Ramirez-Rodriguez staying there. Mr. Ramirez-Rodriguez can receive medical care if needed at a clinic in the community.

It appears that this release plan is well-tailored to mitigate the risk of COVID-19 in this case. So far, there are no confirmed cases of COVID-19 in the Sherburne County Jail, making it less likely Mr. Ramirez-Rodriguez will unknowingly bring it with him to his family. And the residence is large enough to enable significant social distancing even within the home, as Mr. Ramirez-Rodriguez will primarily occupy a separate floor.

### 4. Conclusion

For these reasons, the Court concludes that the unique circumstances of this case, including the factors considered by the *Clark* court, support release under § 3142(i). The Court's ruling should not be read to suggest that all persons with diabetes should be

released, nor that all persons with strong release plans should be released, nor that all persons facing relatively short (by federal court standards) sentences for illegal reentry should be released. Instead, those factors considered as a whole support temporary release in this particular case. Because it is not necessary to keep Mr. Ramirez-Rodriguez in jail in order to protect the community, he should be temporarily released.

### D. The ICE Detainer

Finally, the Court addresses the impact of the ICE detainer on its analysis. As pretrial services has confirmed, Mr. Ramirez-Rodriguez is subject to an ICE hold. This means that, once Mr. Ramirez-Rodriguez is released from the custody of the U.S. Marshal, he will be transferred to ICE custody. The Court sought and received supplemental briefing from the parties regarding how this hold might affect an Order releasing Mr. Ramirez-Rodriguez. The Court finds that nothing about the ICE hold changes its analysis regarding the propriety of temporary release under 18 U.S.C. § 3142(i), though a few arguments raised by the parties merit discussion.

The government suggests that the most likely outcome if Mr. Ramirez-Rodriguez is released from custody is that he will be promptly deported to Mexico, and therefore be unavailable for trial. The government suggests that, because a release Order would eventually result in his removal from the country, it would "allow Mr. Ramirez-Rodriguez to circumvent the criminal justice system and avoid punishment for his recidivist behavior." [ECF No. 39 at 3.] The Court finds this argument unpersuasive. Mr. Ramirez-Rodriguez would not be the one "circumventing" the criminal justice system; instead, the government itself would be preventing him from appearing in court by removing him from the country. This Court and many others have long declined to use the government's own decision to remove an alien during the pendency of his criminal prosecution to preclude release. "The problem here is not that the defendant will absent himself from the jurisdiction, but that two Article II agencies will not coordinate their respective efforts…. This Court ought not run interference for the prosecuting arm of the government." *United States v. Barrera-Omaha*, 608 F.Supp.2d. 1108, 1111-12 (D. Minn. 2009). Put another way, "[t]he fact that ICE will not agree or cannot be trusted to delay deportation—that separate agencies within the Executive Branch do not communicate

12

and cooperate—cannot serve to deprive a defendant of his rights under the Eighth Amendment and the Bail Reform Act." *United States v. Argues-Espinoza*, Case No. 4:18MJ3133, 2018 WL 4492226, *2 (D. Neb. Sept. 19, 2018). The simple fact that the government might choose to deport Mr. Ramirez-Rodriguez despite this Court's Order to release him cannot weigh against the defendant.

Mr. Ramirez-Rodriguez, relying on the above string of cases, argues that if the "'possibility' of ICE detention did not warrant consideration in pretrial-release determinations before coronavirus, it certainly doesn't now." [ECF No. 40 at 4.] The Court rejects this argument as well. Mr. Ramirez-Rodriguez seeks release precisely because his detention in Sherburne County Jail creates a medically dangerous situation for him. If it were certain that he would be detained at Sherburne indefinitely, rather than released or removed, simply moving to the jail's ICE wing from the units reserved for Marshal's detainees, then the Court's temporary release order would make little sense. All that would change for Mr. Ramirez-Rodriguez would be that he would not automatically receive credit against his federal sentence for time served in the very same jail. The Court disagrees that this reality, were it guaranteed, would be irrelevant.

However, overall the Court concludes that it cannot determine with any certainty what will happen to Mr. Ramirez-Rodriguez when released from federal custody as a result of the ICE detainer. Although the government suggests that weekly flights to Mexico are possible, there is no evidence before the Court that such flights are occurring right now, during the pandemic. Even the affidavit from an ICE officer submitted by the government provides no certainty about whether removals are likely in the near term. [ECF No. 39-1.] And the supplemental memorandum submitted by Mr. Ramirez-Rodriguez is replete with evidence, some portions well-substantiated and others more speculative, that ICE is actually deviating from "business as usual" and identifying detainees who would otherwise remain in custody, who should instead be released from ICE custody due to their medical fragility. [ECF No. 40 at 6-7.] Based on this record, the Court finds that not only should the presence of an ICE detainer not control its decision, but also that it is possible and hopefully even probable that ICE will defer to this Court's release Order and allow Mr. Ramirez-Rodriguez to remain on house arrest until otherwise ordered by this Court.

**III. Order**

For the reasons stated above, **IT IS HEREBY ORDERED THAT** motion for reconsideration of detention **[ECF No. 20, 34]** is **GRANTED**. Mr. Ramirez-Rodriguez is released on the following conditions:

• Mr. Ramirez-Rodriguez is released on his own recognizance.

• Mr. Ramirez-Rodriguez shall remain in the custody of ▇▇▇▇▇▇▇▇ who has agreed to assume supervision and report any violation of a release condition to the Court and/or his supervising Pretrial Services Office.

• Mrs. ▇▇▇▇▇▇▇▇ has completed a third-party custodian consent form. Pretrial Services is directed to file that form with the Court, at which time Mr. Ramirez-Rodriguez shall be released from custody of the U.S. Marshals Service.

• Mr. Ramirez-Rodriguez must not violate any federal, state, or local law while on release.

• Mr. Ramirez-Rodriguez must cooperate in the collection of a DNA sample if it is authorized by 42 U.S.C. § 14135a.

• Mr. Ramirez-Rodriguez must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the Court may impose.

• Mr. Ramirez-Rodriguez must reside at the home of Mrs. ▇▇▇▇▇▇▇▇ and be on home detention there (device/equipment free), leaving only for medical care, court appearances, meetings with his attorney, required meetings or proceedings with ICE, and other purposes approved in advance by his Pretrial Services Officer. Specifically, home detention is to be observed while residing in the residence of his third-party custodian.

• Mr. Ramirez-Rodriguez must reside at the home of Ms. ▇▇▇▇▇▇▇▇ and be on house arrest there, leaving only for medical care, court appearances, meetings with his attorney, required meetings or proceedings with ICE, and other purposes approved in advance by his Pretrial Services Officer.

• Mr. Ramirez-Rodriguez shall submit to supervision by and report for supervision to the U.S. Probation and Pretrial Services Office as directed.

• Mr. Ramirez-Rodriguez shall report as soon as possible, to the pretrial services office or supervising officer every contact with law enforcement personnel, including arrests, questioning, or traffic stops.

• Mr. Ramirez-Rodriguez must comply with immigration and customs enforcement.

• Travel shall be restricted to the District of Minnesota unless approved in advance by supervising officer.

• If he possesses one, Mr. Ramirez-Rodriguez must surrender any passport, Green Card, Visa, Advanced Parole Document, Refugee Travel Permit/Reentry Document, or other foreign travel document to Probation and Pretrial Services.

• Mr. Ramirez-Rodriguez is prohibited from obtaining a passport, Green Card, Visa, Advanced Parole Document, Refugee Travel Permit/Reentry Document, or other foreign travel document.

• Mr. Ramirez-Rodriguez may not possess a firearm, destructive device, or other weapon.

Date: April 13, 2020

    *s/Katherine Menendez*
Katherine Menendez
United States Magistrate Judge